IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RONALD SMOLNIK, and DOLLY SMOLNIK, ) ) ) | |
| Plaintiffs, ) ) | 8:04CV401 |
| v. ) ) | |
| ) | MEMORANDUM AND ORDER |
| THOMAS VAN DYKE, and SUE VAN DYKE, ) ) ) | |
| Defendants. ) ) | |

This matter is before the court on Ronald and Dolly Smolnik's (collectively "plaintiffs") motion in limine, Filing No. 127, and Thomas and Sue Van Dyke's (collectively "defendants") motion in limine, Filing No. 132.  In this action, plaintiffs seek damages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (hereinafter, "FLSA"*),* to recover minimum wage and overtime pay compensation related to their duties as managers of defendants' Ranch Motel and Storage ("RMS").

**Plaintiffs' Motion in Limine**

In their motion in limine, plaintiffs seek to exclude the expert testimony of James Marlin Brabec ("Brabec"), as well as any exhibits and reports Brabec prepared, contending that Brabec's testimony and reports are irrelevant and will unnecessarily confuse the jury, and that Brabec's methodology is flawed according to *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993).  Filing No. 128.  Brabec is expected to testify concerning the fair rental value of the house ("house") owned by the defendants and occupied by the plaintiffs

during the time plaintiffs worked for RMS.[1]  Filing No. 149-1.  The plaintiffs occupied this house adjacent to RMS and received occupancy of it rent-free, including utilities, while performing their management duties at RMS.  Filing No. 153-1; Dolly Smolnik Dep. 133:1-135:14 (Filing No. 104, ex. 6).

### A. Relevance; Jury Confusion

Defendants assert that compensation may include boarding, lodging, or other facilities under 29 U.S.C. § 203(m),[2] and as such, Brabec's testimony concerning the fair rental value of the home is necessary to establish plaintiffs' compensation in the event plaintiffs are considered employees rather than independent contractors.  Plaintiffs argue that Brabec's testimony is irrelevant because the plaintiffs' occupancy at the house benefitted defendants as employers and should not be considered in plaintiffs' calculated wages.  *See* C.F.R. § 531.3 (2006).

In order to establish relevance, the proponent of expert testimony must show that the reasoning or methodology in question is applied properly to the facts in issue.  *Daubert*

---

[1] Plaintiffs' exact dates of occupancy are unclear from the record.  Defendants maintain that plaintiffs occupied the house from April 16, 1997, through June 30, 2004, although this is the entire time period in which defendants reportedly owned RMS.  Filing No. 149-1; Filing No. 153-1.  Plaintiffs contend that they did not work for RMS before they signed a "Non-Employee Service Contract": a document signed by plaintiffs on December 31, 1998.  Filing No. 152; Filing No. 104, ex. 9.  Plaintiffs allegedly worked for RMS until they submitted letters of resignation dated May 30, 2004.  Filing No. 152; Filing No. 104, ex. 13.

[2] 'Wage' paid to any employee includes the reasonable cost, as determined by the Administrator [Secretary], to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees: Provided, That the cost of board, lodging, or other facilities shall not be included as a part of the wage paid to any employee to the extent it is excluded therefrom under the terms of a bona fide collective-bargaining agreement applicable to the particular employee: Provided further, That the Secretary is authorized to determine the fair value of such board, lodging, or other facilities for defined classes of employees and in defined areas, based on average cost to the employer or to groups of employers similarly situated, or average value to groups of employees, or other appropriate measures of fair value. Such evaluations, where applicable and pertinent, shall be used in lieu of actual measure of cost in determining the wage paid to any employee. 29 U.S.C. § 203 (2006).

*v. Merrell Dow Pharms.*, 509 U.S. 579, 591-93 (1993). "Courts should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility. *Marmo v. Tyson Fresh Meats*, 2006 U.S. App. LEXIS 19609, *13-*15 (2006); *Clark v. Heidrick*, 150 F.3d 912, 915 (8th Cir. 1998).

Regulations promulgated pursuant to the FLSA require that facilities furnished primarily for the benefit or convenience of the employer not be included in computing wages and the reasonable cost of lodging furnished by the employer be not more than the actual cost. 29 C.F.R. § 531.3 (2006). Reasonable cost is the cost of operation and maintenance, including adequate depreciation, plus a reasonable allowance for interest on the depreciated amount of capital invested by the employer, unless the total as computed in that manner is more than the fair rental value, in which case the reasonable cost is the fair rental value. 29 C.F.R. § 531(c) (2006).

In order for the trier of fact to ascertain whether lodging may be included in compensable wages, the trier of fact first has to determine if plaintiffs worked as employees or independent contractors. Evidence of the house's rental value is not relevant to a determination of plaintiffs' status, but it is possible that Brabec's assessment of the house rental value will be relevant to the determination of reasonable cost.

### B. *Daubert*

Federal Rule of Evidence 702 governs the admissibility of expert testimony and requires that: "(1) the evidence must be based on scientific, technical or other specialized knowledge that is useful to the finder of fact in deciding the ultimate issue of fact; (2) the witness must have sufficient expertise to assist the trier of fact; and (3) the evidence must be reliable or trustworthy." *Kudabeck v. Kroger Co.*, 338 F.3d 856, 859 (8th Cir. 2003).

Expert testimony assists the trier of fact when it provides information beyond the common knowledge of the trier of fact. *Id.* at 860.

When faced with a proffer of expert testimony, trial judges are charged with the "gatekeeping" responsibility of ensuring that all expert evidence admitted is both relevant and reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993); *United States v. Wintermute*, 443 F.3d 993, 1000 (8th Cir. 2006). This analysis requires that the court make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology . . . can be [properly] applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. The court may consider several factors in determining the soundness of the scientific methodology including: (1) whether the theory or technique can be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error and the existence and maintenance of standards controlling the technique; and (4) whether the theory or technique used has been generally accepted in the relevant scientific community. *Id.* at 593-594. Courts must focus on the principles and methodology rather than the conclusion they generate. *Id.* at 595.

"Nothing in Rule 702, *Daubert*, or its progeny requires 'that an expert resolve an ultimate issue of fact to a scientific absolute in order to be admissible.'" *Kudabeck*, 338 F.3d at 861 (*quoting Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929 (8th Cir. 2001). Rather, the proponent of expert testimony bears the burden of providing admissibility beyond a preponderance of the evidence. *Lauzon v. Senco Prods.*, 270 F.3d 681, 686 (8th Cir. 2001). The expert's assurances that he has utilized generally accepted scientific

4

methodology is insufficient to establish admissibility.  *Daubert v. Merrell-Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1315-16 (9th Cir. 1995) (on remand).  The United States Court of Appeals for the Eighth Circuit adheres to the rule that when the application of a scientific methodology is challenged as unreliable under *Daubert* and the methodology itself is otherwise sufficiently reliable, outright exclusion of the evidence is "warranted only if the methodology was so altered by a deficient application as to skew the methodology itself."  *United States v. Gipson*, 383 F.3d 689, 697 (8th Cir. 2004) (brackets omitted) (*quoting United States v. Martinez*, 3 F.3d 1191, 1198 (8th Cir. 1993)).

Plaintiffs do not contend that Brabec possesses the qualifications necessary to testify as an expert under Rule 702.  Rather, the issue of contention between the parties centers on whether Brabec's methodology is reliable.  Plaintiffs argue Brabec's testimony is inadmissible because he failed to consider proper comparable properties in determining the rental value of the home.  Plaintiffs claim Brabec compared residences in exclusively residential neighborhoods rather than properties located in mixed-use neighborhoods. Additionally, plaintiffs maintain their positions at RMS prevented them from leaving the premises, required them to be available around the clock, and subjected them to customer interruptions.  Plaintiffs contend it is this work environment that significantly alters the value of the home and should have been considered in Brabec's estimation of the home's value.

Brabec is a Nebraska licensed real estate broker with Don Peterson & Associates, a real estate company in Fremont, Nebraska, where the house is located.  Filing No. 130. He is currently the managing partner of the rental department and owns over 35 rental units in Fremont.  Brabec has been a licensed real estate broker since 1985 and is currently a farm land and acreage broker.  He has not authored any publications in the last

ten years, but he supplemented his list of qualifications with three cases in which he has testified. Absent from this list is court information, case numbers, dates, and the capacity in which Brabec testified.

In his two-page letter to attorney Jennifer R. Petersen, Brabec states that he conducted an inspection of the house and compared it to three properties. Filing No. 130. In addition to a photograph of each of these properties, Brabec provided an address, brief description of the property, and a rental amount. Brabec further states that he considered all properties managed by Don Peterson & Associates, including those located in Fremont, as well as those properties personally owned by Brabec, in arriving at a fair market rent for the house. These properties are not identified with description, location, or valuation information. Brabec maintains his expert opinion is based on his knowledge of listed comparable properties, real estate experience, Don Peterson & Associates properties, properties Brabec owns, and his inspection of the house.

At his deposition, Brabec made the distinction between a broker opinion and an appraisal.[3] The latter, Brabec noted, is subject to uniform standards promulgated by real estate organizations.[4] Filing No. 131; Brabec Dep. 14:2-11. When asked what standards applied to broker opinions, Brabec stated the realtor's code of ethics and his company's

---

[3] "Broker's price opinion means an analysis, opinion, or conclusion prepared by a person licensed under the Nebraska Real Estate License Act in the ordinary course of his or her business relating to the price of specified interests in or aspects of identified real estate or identified real property for the purpose of listing, purchase, or sale[.]" Neb. Rev. Stat. § 81-885.01 (2006).

[4] The Nebraska Real Estate Appraiser Act provides in relevant part that

[e]ach credential holder shall comply with generally accepted standards of professional appraisal practice and generally accepted ethical rules to be observed by a real estate appraiser. The board shall adopt and promulgate rules and regulations which may conform to the generally accepted standards of professional appraisal practice evidenced by the Uniform Standards of Professional Appraisal Practice. The board shall review such rules and regulations annually. Neb. Rev. Stat. § 76-2237 (2006).

standard practice. Filing No. 131; Brabec Dep. 14:12-19. Brabec did not identify these standards, acknowledge any methods or formulas that may be promulgated by such standards, or state whether he comported with any standards in arriving at his opinion of the house rental value. The only indication of Brabec's methodology is his admission that he did not evaluate any rental units in any mixed use neighborhoods. Filing No. 131; Brabec Dep. 15:19-16:4.

Despite its potential relevancy, this court finds Brabec's proposed testimony is inadmissible not because he failed to employ a scientific method, but because he neglected to illustrate a reliable adherence to a real estate rental valuation method. Brabec's opinion letter does not provide the court with any indication of the method and formulas by which he applied the aforementioned bases of opinion to the house rental value. Consequently, Brabec's proposed expert opinion is insufficient to meet the defendants' burden under *Daubert*, and the court grants the plaintiffs' motion in limine to preclude Brabec's expert testimony.

**Defendants' Motion in Limine**

Defendants asked this court to preclude any witness, any representative of the plaintiffs, or plaintiffs' counsel, from making statements related to six subject areas (hereinafter "subject area __"):

1. Thomas Van Dyke's alleged statement to Dolly Smolnik that Dolly's husband should "pimp her out";

2. Thomas Van Dyke's alleged derogatory demeanor towards women;

3. Thomas Van Dyke's purported statement to Dolly Smolnik that Sue Van Dyke is stupid and that without a man Sue Van Dyke could not do anything;

4. Plaintiffs alleged claim against defendants with the Nebraska Equal Opportunity Commission or the Equal Employment Opportunity Commission;

>     5.  Plaintiffs alleged claim with the United States Department of Labor and any alleged investigation regarding minimum wage and overtime while plaintiffs managed RMS; and
>
>     6.  Defendants' personal finances.[5]

Plaintiffs oppose the defendants' motion in limine contending that subject areas one through three prove willfulness, an element of 29 U.S.C. § 255(a) that warrants a three-year statute of limitations.[6] Filing No. 136. The court finds this argument irrelevant as all evidence in the record indicates plaintiffs' FLSA claim is not barred by the applicable two-year statute of limitations, and defendants assert no claim that plaintiffs failed to bring their claim within the statutory period.

Based on paragraph 11 of plaintiffs' complaint (Filing No. 1-1; *see also* amended complaint, Filing No. 135), wherein plaintiffs seek minimum wage and overtime pay for three years preceding filing of this suit, this court assumes plaintiffs advanced their willful argument under the misconception the statute of limitations relates to plaintiffs' measure of damages. However, the difference between the two-year and three-year statutes of limitations does not result in the difference between two years and three years of liability for unpaid overtime. *Prof'l Firefighters Ass'n v. Clayton*, 759 F. Supp. 1408, 1414, 1415 (D. Mo. 1991). *Contra Bailey v. Ameriquest Mortg. Co.*, 2002 U.S. Dist. LEXIS 1343 (D. Minn. 2002), *rev'd on other grounds*, 346 F.3d 821, 822 (8th Cir. 2003) (a finding of

---

[5] For clarity and organization purposes, the subject areas vary in order from defendants' motion in limine, Filing No. 132.

[6] Any action accruing after May 14, 1947, must be commenced within two years, except that a cause of action arising out of a willful violation must commence within three years. 29 U.S.C. § 255 (2006). In order to prove willfulness, plaintiffs must demonstrate the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Samuels v. Kan. City Mo. Sch. Dist.*, 437 F.3d 797, 803 (8th Cir. 2006) (*quoting McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *Hanger v. Lake County*, 390 F.3d 579, 583 (8th Cir. 2004). Plaintiffs submitted letters of resignation dated May 30, 2004, and filed this action on August 25, 2004.

willfulness extends the limitations period from two to three years, thereby allowing a plaintiff to recover damages for an extra year). Statutes of limitation do not pertain to the scope of an action, but to whether the action can be brought at all. *Clayton*, 759 F. Supp. at 1414.

In their complaint, plaintiffs requested liquidated damages in the amount found due for minimum wage and overtime pay, attorney fees, and costs. Filing No. 1-1; Filing No. 135. Plaintiffs contend that a finding of willfulness impacts liquidated damages and recovery of attorney fees and costs. Filing No. 136. The damages provision of 29 U.S.C. § 216 provides that the court may award reasonable attorney fees, to be paid by the defendant, and costs of the action. However, the provision makes no reference to the term "willful."[7] Indeed, the reference to liquidated damages in 29 U.S.C. § 216(b) is "'something of a misnomer' because it is not a sum certain amount determined in advance[;] rather it is 'a means of compensating employees for losses they might suffer by reason of not receiving their lawful wage at the time it was due.'" *Broadus v. O.K. Indus.*, 226 F.3d 937, 943 (8th Cir. 2000) (*quoting Reich v. Southern New Eng. Telcoms. Corp.*, 121 F.3d 58, 70 n.4 (2d Cir. 1997). The court may award liquidated damages at its discretion if "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that [the employer] had reasonable grounds for believing [the] act or omission was not a violation." 29 U.S.C. § 260 (2006) (establishing under the Portal-to-Portal Act an employer's good faith defense and the court's discretion to award no liquidated damages or award any amount thereof not to exceed the amount specified in

---

[7] The only references to the term "willful" occur in the following provisions: subsection (a) - fines and imprisonment; and subsection (e) - civil penalties for child labor violations. These sections are unrelated to the case at bar.

9

section 216); *Jarrett v. ERC Props.*, 211 F.3d 1078, 1083 (8th Cir. 2000). Therefore, whether plaintiffs are entitled to liquidated damages remains in the court's discretion not subject to a finding of willfulness. Accordingly, this court finds that subject areas one through three are inadmissible.

Additionally, subject areas one through three are irrelevant and not probative to a factual inquiry regarding the material issue in this case - plaintiffs' status as employees or independent contractors. As such, defendants' motion in limine with respect to subject areas one through three is hereby granted.

Plaintiffs argue that subject area four is relevant to establish that plaintiffs interpreted Thomas Van Dyke's behavior as offensive enough to warrant filing an alleged complaint with the Nebraska Equal Opportunity Commission (NEOC). This court agrees with defendants' contention that such evidence is not relevant to the current proceedings as this is not a discrimination action. Evidence of an alleged NEOC claim is not probative of whether plaintiffs worked as employees or independent contractors. Therefore, defendants' motion in limine with respect to subject area four is granted.

Regarding subject area five, plaintiffs allegedly filed a complaint with the Department of Labor (DOL) and spoke with Agent Garcia, a DOL agent, before terminating their employment at RMS. Filing No. 104-5; Dolly Smolnik Dep. 12:25-16:6. At her deposition, Dolly Smolnik claimed Agent Garcia told her the plaintiffs were employees rather than contractors. Filing No. 104-5; Dolly Smolnik Depo. 13:14-14:4. Dolly Smolnik claimed the DOL did not pursue any action against the defendants because the defendants sold RMS. Filing No. 104-5; Dolly Smolnik Depo. 14:22-15:4. Defendants argue that evidence regarding subject area five is inadmissible hearsay and constitutes testimony on the

ultimate issue. Filing No. 148. The court has reviewed the record and finds no evidence exists related to plaintiffs' alleged contact with Agent Garcia or any purported DOL investigation.[8] Thus, the court will permit plaintiffs to testify regarding the alleged DOL complaint and any hearsay objections will be dealt with appropriately at trial. Accordingly, defendants' motion in limine regarding subject area five is denied at this time without prejudice to reassertion at trial.[9]

Defendants object to the admission of evidence related to their personal finances. Magistrate Judge Thomas D. Thalken previously ordered the production of defendants' tax returns and defendants' complied by submitting redacted tax returns. Filing No. 87; Filing No. 148. This court agrees with Magistrate Judge Thalken's determination that financial information unrelated to RMS is "irrelevant and would not be reasonably calculated to lead to the discovery of admissible evidence." Filing No. 87. Accordingly, evidence of defendants' personal finances unrelated to RMS is inadmissible and defendants' motion in limine regarding subject area six is granted.

Accordingly,

  IT IS ORDERED that

  A. The plaintiffs' motion in limine (Filing No. 127) is granted.

---

[8] At her deposition, Dolly Smolnik viewed Exhibit A, a statement Ronald Smolnik allegedly produced to the DOL. Dolly Smolnik was unable to identify whether the blackened-out portion of Exhibit A constituted Ronald Smolnik's signature. Filing No. 104-5; Dolly Smolnik Dep. 15:5-16:6.

[9] Plaintiffs argued that defendants' financial situation related to whether the defendants' behavior was willful and whether defendants' alleged violations were "made in good faith." This court found willfulness did not pertain in this case. *See supra* pages 8-11. Defendants' personal finances are not relevant to a finding of good faith, and as discussed above, the burden rests on employers to prove to the court that the violation or omission was in good faith. *See supra* page 10; 29 U.S.C. § 260 (2006); *Jarrett v. ERC Props.*, 211 F.3d 1078, 1083 (8th Cir. 2000).

    B.   Defendants' motion in limine (Filing No. 132) is granted in part and denied in part according to the following subject areas:

1. Evidence of Thomas Van Dyke's alleged statement to Dolly Smolnik that Dolly's husband should "pimp her out"; - GRANTED;

2. Evidence of Thomas Van Dyke's alleged derogatory demeanor towards women; - GRANTED;

3. Evidence of Thomas Van Dyke's purported statement to Dolly Smolnik that Sue Van Dyke is stupid and that without a man Sue Van Dyke could not do anything; - GRANTED;

4. Evidence of plaintiffs alleged claim against defendants with the Nebraska Equal Opportunity Commission or the Equal Employment Opportunity Commission; - GRANTED;

5. Evidence of plaintiffs alleged claim with the United States Department of Labor and any alleged investigation regarding minimum wage and overtime while plaintiffs managed RMS; - DENIED without prejudice to reassertion at trial; and

6. Evidence of defendants' personal finances; - GRANTED.

DATED this 30th day of August, 2006.

                                       BY THE COURT:

                                       **s/ Joseph F. Bataillon**
                                       United States District Judge